Filed 10/25/22 Buechler v. Butker CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| VIRGINIA J. BUECHLER et al., | |
| Plaintiffs, Cross-defendants and Appellants, | G060470 |
| v. | (Super. Ct. No. 30-2016-00891108) |
| VANESSA BUTKER et al., | O P I N I O N |
| Defendants, Cross-complainants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Martha K. Gooding, Judge. Affirmed.

Bohm Wildish & Matsen, Daniel R. Wildish and Charles H. Smith for Plaintiffs, Cross-defendants and Appellants.

Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Defendants, Cross-complainants and Respondents Vanessa Butker and Sister Group LLC.

Dack Marasigan and Martin E. Dack for Defendant, Cross-complainant and Respondent Lenora Schroeder.

# INTRODUCTION

Virginia Buechler and Bruce Woockman (appellants) have again appealed from an order denying their request for attorney fees for enforcing a judgment against Vanessa Butker, Lenora Schroder, and Sister Group, LLC (defendants or respondents), through a contempt motion. This is the second time an attorney fee order has been before us in this case. In the first appeal, we reversed the order denying fees under Code of Civil Procedure section 645.040 because the trial court had erred in applying the statute.[1] We sent the matter back, however, because we concluded the trial court had not considered an additional statutory factor: whether the fees incurred were "reasonable and necessary." We instructed the court to make the necessary findings as to this issue.

On remand, the court made these findings. It found that the fees incurred to bring the contempt motion were *not* reasonable and necessary; in fact, appellants' activities, including the motion, were designed to make respondents' efforts to comply with the judgment against them "as difficult and costly as possible." Accordingly, the court denied the attorney fee motion.

We affirm the order. Appellants bore the burden of proof on this issue, and the trial court's determination they failed to bear it means that, on review, their evidence had to be uncontradicted and unimpeached. The trial court found defendants had made significant progress in complying with the judgment *before* appellants filed their contempt motion. Far from being reasonable and necessary, the motion itself had no influence on respondents' compliance efforts at all. Subsequently appellants seemed bent on putting obstacles in the way of compliance, delaying resolution – and thereby multiplying attorney fees –as much as possible. That's the way it looks to us as well.

---

[1] *Buechler v. Butker* (Nov. 23, 2020, G058054) [nonpub. opn.].
All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## FACTS

We recite the facts from our previous opinion up to the point of the first appeal.

"In April 2017, Buechler filed the underlying complaint for trespass and nuisance against defendants . . . , alleging defendants were, without permission, maintaining an illegal sewer hookup that encroached on Buechler's property. At a mediation in September 2017, the parties entered into a settlement agreement, the gist of which was that defendants would pay nothing on the complaint, but would detach and cap their sewer line from the line on Buechler's property by December 31, 2017. As to attorney fees, the agreement provided that each side would bear its own fees, but that in any motion to enforce the settlement pursuant to section 664.6, the prevailing party would be entitled to reasonable fees.

"The work to detach and cap the sewer line had not begun by December 31, 2017, prompting appellants to move for entry of judgment on the settlement agreement pursuant to section 664.6.[] The court granted the motion in April 2018, and judgment was entered pursuant to the terms of the settlement agreement in July 2018.

"Meanwhile, in October 2017 defendant Sister Group, LLC had acquired a new owner, K. Koukladas. In July 2018, Koukladas began working with city and county authorities in earnest to comply with the judgment. The Orange County Sanitation District (OC Sanitation) initially told him that Sister Group, LLC could not connect directly to a public sewer line, but would instead have to connect to a lateral line on Lincoln Avenue (where the parties' properties are located), which was owned by the City of Orange (the City). He then reached out to City authorities, who took some time to research the matter and collaborate with OC Sanitation. About a week after Koukladas's initial inquiry, the City responded stating it had completed its research and concluded that Sister Group LLC would be permitted to connect to the lateral line. The e-mail included a description of the application process and costs.

3

"By November 2018, Koukladas was prepared to move forward with attaching to the lateral line and once again received confirmation from the City that it would be allowed. In January 2019, Koukladas hired a contractor to complete the work.

"However, on January 15, 2019, the City e-mailed the contractor to say that Buechler's attorney had contacted the City, presented the judgment, and demanded that defendants not be allowed to connect to the lateral line. The City put the project on pause pending a review by the City Attorney.

"That same day, appellants filed a motion to hold defendants in contempt of court on the ground that defendants 'have failed and *refused* . . . to perform the work required of them by the Judgment . . . .' (Italics added.)

"Meanwhile, the process with the City continued apace. On January 18, 2019, the City took the position that the judgment prohibited any connection to the public sewer line 'anywhere along the sewer line that [Buechler] installed – regardless if the connection is to be made in the Public [right of way].' The City suggested that defendants either build their own lateral line or go to court to have the judgment modified to permit the connection.

"In response, Koukladas contacted OC Sanitation about the possibility of installing a new lateral line. However, OC Sanitation forbade it. A meeting was then convened involving Koukladas, a representative from OC Sanitation, and the City. At the meeting, OC Sanitation and [the] City took conflicting positions. OC Sanitation took the position that the lateral line belonged to the City and that it would need to allow its residents to connect to the lateral line. The City took the position that Buechler owned the lateral line (or, at minimum, that the ownership was unclear).

"As a workaround, Koukladas sought permission from the City to connect to a City owned septic tank. Although the City was initially resistant to the idea, it soon acquiesced. Koukladas then located and, on January 25, 2019, hired a septic tank

4

specialist to perform the work at a cost of $8,000 to $10,000. He then informed Woockman of the plan to connect to the septic tank.

"Three days later, Koukladas contacted the City to verify the steps needed to connect to the septic tank. The City responded by informing Koukladas that Buechler *would* permit a connection to the lateral line, but only on certain conditions, including that Koukladas install a new manhole and the City agree to maintain and repair the lateral line. As a result, the City rescinded its permission to allow Koukladas to connect to the septic tank. The cost to install the manhole and connect to the lateral was estimated to be $35,000 to $50,000.

"Buechler formally gave the City permission to permit the lateral connection on February 15, 2019.

"In March 2019, the court denied appellants' motion to hold defendants in contempt. Based on the record before it, the court concluded defendants' failure to comply with the judgment was not willful.

"In April 2019, appellants moved for post-judgment attorney fees in the amount of $37,052.50. The motion was made pursuant to section 685.040, which . . . permit[s] the recovery of attorney fees incurred to enforce a judgment.[2] The court denied it on two grounds: (1) the fees were not incurred to enforce the judgment, and (2) the underlying settlement agreement did not permit the recovery of such fees." (*Buechler v. Butker, supra,* G058054, pp. 3-6.)

Appellants appealed from this order. We reversed it on the ground that (1) the contempt motion qualified as an enforcement of the judgment (*Buechler v. Butker, supra,* G058054, p. 8); (2) the judgment contained an award of contractual attorney fees

---

[2] Section 685.040 provides, "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment. Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title unless otherwise provided by law. Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of Section 1033.5."

5

(*ibid.*); and (3) neither the parties nor the court had considered a third requirement of an award of fees under section 685.040, that the fees requested be "reasonable and necessary costs of enforcing a judgment." (*Id.* at pp. 8-9.) We returned the matter to the trial court to "make findings in the first instance as to whether the fees appellants incurred on the contempt motion were reasonable and necessary." (*Id.* at p. 3.)

In our first opinion, we made two other observations that are now relevant to this appeal. We observed that the only "enforcement" involved was the contempt motion. (*Buechler v. Butker, supra,* G058054, p. 8.) So the fees to be inspected on remand were those relating to the preparation of the contempt motion. Second, we agreed with the trial court for the most part on its assessment of the line items in the bills – the descriptions were vague and did not show a connection to any enforcement procedure. "Moreover, the evidence supports a conclusion that Buechler's shifting position on how defendants were to replace their sewer connection, and the fees incurred in connection with that, were counterproductive and, rather than enforcing the judgment, inhibited the enforcement of the judgment." (*Id.* at pp. 7-8.) So the fees incurred for these activities were not enforcement fees.

Appellants filed their motion for attorney fees on remand on February 8, 2021. This time they asked for $59,395. This amount included the original $37,052 in fees that was the subject of the first appeal, $15,127 in fees for the appeal itself, and $7,215 for the second attorney fee motion. Counsel then asked for another $1,000 in fees to prepare for and appear at the hearing on the motion, bringing the total to over $60,000.

On remand, the court concluded the contempt motion was not the reason, or even *a* reason, that defendants complied with the judgment. Even before the contempt motion was filed, respondents were already making progress in fixing the sewer line problem. The court quoted the passage from our first opinion in which we observed that Buechler's counterproductive interactions with the City and OC Sanitation inhibited enforcement and added its own conclusion "Buechler's actions were intended to impede

6

Defendants' efforts to comply with the Judgment and to make it as difficult and costly as possible for Defendants to construct a new sewage disposal system for their property." On that basis, the court denied the fee motion in its entirety.

In an obvious attempt to forestall yet another fee motion, the court included a discussion of the fees it *would* have ordered if it had concluded the contempt motion was what got defendants going on their efforts to comply with the judgment. Although it approved of the hourly rates, the court found that the hours requested far exceeded what was "reasonable and necessary" to prepare a contempt motion. It concluded it would have awarded $6,750 for the contempt motion itself, $7,100 for the appeal, and $5,200 for the attorney fee motions, for a total of $19,050. That was an admirable "extra mile."

## DISCUSSION

### I. Evidentiary Rulings

Appellants complain the trial court made a "blanket" evidentiary ruling to their objections to two declarations filed in opposition to the attorney fee motion, thereby abusing its discretion. Appellants filed 37 objections to paragraphs and exhibits in the two declarations. They objected to each paragraph on multiple grounds.

The court overruled all the objections. It overruled objections based on relevance, lack of authentication, and Evidence Code section 352.[3] It also overruled "vague, ambiguous, and unintelligible" objections, as well as "mischaracterizes the evidence" objections. It pointed out that appellants' hearsay objections were to blocks of testimony, some of which was not hearsay. And finally many of the hearsay objections were to statements that were not offered for their truth, but rather to explain subsequent conduct. The court also declined appellants' invitation to hold an evidentiary hearing so

---

[3] Appellants included 37 objections under Evidence Code section 352, one for each paragraph, on the grounds of undue consumption of time or creation of undue prejudice, confusing the issues, or misleading the jury. This code section is primarily pointed toward trial. It unduly consumes the court's time to make such an objection 37 times in connection with an attorney fee motion. Appellants never articulated the grounds for undue prejudice or confusion of issues, and there was no jury.

7

that they could present their own evidence. The court observed that appellants could have filed their own controverting declarations, but had chosen to rely instead on their objections to the evidence. Appellants assert that the court abused its discretion, not by mistakenly overruling individual objections, but by failing to rule on each one separately.

We have, after notice to the parties, augmented the record with the minute order of March 18, 2019, the ruling on appellants' contempt motion. The defendants' declarations filed in connection with the motion before us now, explaining the history of the dispute, substantially repeated the declarations they filed to oppose the contempt motion. Appellants' evidentiary objections to these prior declarations are virtually identical to the objections they filed in the fee motion before us.

The court overruled all the evidentiary objections filed in connection with the opposition to the contempt motion, explaining in some detail why it did so: "The statements, by various third parties . . . in the emails attached to the declarations, are not admissible for their truth [citation], but they are admissible to show the effect of the statement on the recipient's state of mind, i.e., Koukladas's belief that he could not proceed to connect the property to the public sewer line. The emails have been sufficiently authenticated by the declarants, who have attested they were the recipients of the emails. [Citations.] Finally, there is no basis to exclude them under Evidence Code Section 352. The evidence is relevant in that it tends to show Defendants' failure to comply with the 7/18/18 judgment was not willful."

When they filed their objections to the fee motion, appellants ignored the rulings the court had made to identical objections in the contempt motion. They made no effort, for example, to prune the hearsay objections to eliminate objections to statements not offered for their truth. They repeated their authentication objections to emails. They simply replicated the prior objections, as if the court had never seen them before.

8

We do not believe the court abused its discretion in giving the objections a more cursory treatment the second time around. It had already explained its reasoning for overruling them and did not need to go into detail again.

In addition, and most importantly, appellants have failed to suggest how they were prejudiced by the introduction of the declarations. (See § 475.) The issue before the court was whether the contempt motion was a reasonable and necessary measure to prod respondents into complying with the judgment. The declarations explained what they had been doing to comply. Appellants did not, for the most part, object to these portions of the declarations. For example, Koukladas declared that he had arranged to finance the sewer hookup by November 2018 and that he told one of the appellants in December that the City was allowing respondents to connect with the main sewer line. He had also hired, in January 2019, a contractor to do the disconnection and reconnection. These actions all occurred before appellants filed their contempt motion.

Appellants objected to none of this testimony, and it was the core of the evidence upon which the court based its ruling. (See *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1582 [unobjectionable evidence supplied basis for granting motion].) Appellants have not specified any improperly admitted evidence that, if excluded, would have changed the outcome, nothing that would have established that the contempt motion was a reasonable and necessary means of causing defendants to comply with the judgment.

II.          **Ruling on Attorney Fee Motion**

We can dispose of several categories of fees quite quickly. As we stated in our first opinion, the only candidate for an enforcement proceeding was the contempt motion. A separate motion for attorney fees is not an enforcement proceeding under section 685.040. So this statute does not authorize fees for making a motion for fees. Appellants have cited no other authority – statutory or case law – supporting recovery for this type of attorney fee.

9

As we held in our first opinion, a contempt motion qualifies under section 685.040 as an enforcement of a judgment. Taking a writ from an order denying a contempt motion could also be considered part of the enforcement process.[4] But in this case, appellants did not seek review of the order denying their contempt motion. They sought reversal of the order denying their motion for attorney fees, and the fees involved in that motion went far beyond those incurred in connection with the contempt proceeding.[5] We conclude that section 685.040 does not provide authority for an award of attorney fees for an appeal from an order denying attorney fees not incurred in connection with an enforcement proceeding.

This leaves the fees incurred in bringing the contempt motion, unquestionably an enforcement of the judgment. Whether circumstances supporting the award of attorney fees exist is a separate issue from the amount of those fees. (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 153-154.)

In this case, the court declined to award any fees for the contempt motion, on the ground the motion was not necessary. The defendants were already making significant progress in resolving the sewer line problem. In fact, appellants' actions "threw a monkey wrench into [defendants'] efforts to comply with the Judgment." "Indeed, this Court finds that the evidence before it – and the reasonable inferences the Court draws from it – supports a conclusion that Buechler's actions were intended to impede Defendants' efforts to comply with the Judgment and to make it as difficult and costly as possible for Defendants to construct a new sewage disposal system for their property."

---

[4]  Orders in contempt cases are final and conclusive (§ 1222) and are not appealable (*id*., § 904.1, subd. (a)(1).) (*McCord v. Smith* (2020) 51 Cal.App.5th 358, 367.)

[5]  In their fee motion on remand, appellants sought the same amount of fees, $37,052, that they had sought by way of their first motion. They obviously made no attempt to restrict their request to fees incurred only for bringing the contempt motion.

Appellants assert that the standard of review for an attorney fee motion is abuse of discretion. This is true when the amount is in dispute, as, for example, when an appellant claims an award was too stingy or too generous. When a party's entitlement to an award is at issue, however, we examine the evidence to determine whether the criteria identified in the statute as criteria for the award exist. (See *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 110; see also *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 940-941 [private attorney general statute]; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545 [partition action].)

In this case, one criterion was that the enforcement proceeding be reasonable and necessary. Appellants had the burden of proof to show their entitlement to statutory attorney fees. (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 926.) The trial court determined they had not carried it. This determination alters our review on appeal.

Our substantial evidence review of this issue differs from the standard we would use for an appellant who contended that the party with the burden of proof had *not* borne it, after the trier of fact concluded it had. In this case, the parties with the burden of proof, appellants, contend, in essence, that they *did* bear it, after the trier of fact concluded they did not. "On appeal from a determination of failure of proof at trial, the question for the reviewing court is '"whether the evidence compels a finding in favor of the appellant as a matter of law."' [Citation.] Specifically, we must determine '"whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'"' [Citations.] We are also guided by the principle that the trial court's judgment is presumed to be correct on appeal, and we indulge all intendments and presumptions in favor of its correctness." (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 769.)

11

"Where, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing plaintiff [in this case, the losing moving party], we presume the trial court found the [moving party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.]" (*Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.)

In this case, the evidence of the necessity and reasonableness of the contempt motion was not uncontradicted and unimpeached. On the contrary, the trial court found the motion was neither necessary nor reasonable, basing its findings on the evidence of respondents' efforts to comply with the judgment before the motion was filed, in January 2019, and their continuing efforts before the motion was denied, in March. In addition, the trial court noted the actions that "thwarted" respondents' efforts, caused a "setback," and "threw a monkey wrench" into compliance. The court concluded that the "Contempt Motion is not what caused or prompted [respondents] to comply with the judgment." Appellants bore the burden of proof on this issue, and we have been unable to find a reason to overturn the trial court's findings on it.

The case on which appellants chiefly rely, *Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, is inapposite. In that case, defendant homeowners prevailed in an action brought by their homeowners' association (HOA) and were clearly entitled to attorney fees as prevailing parties. (*Id.* at p. 1398.) The trial court nevertheless refused to award any fees, citing the pettiness of the dispute. (*Id.* at pp. 1396-1397,1398.) We held this to be an abuse of discretion. (*Id.* at p. 1397.) As for this court's "preposterous!" remark, it was occasioned by the HOA's argument on appeal that zero was an acceptable amount for an award. We noted that the HOA itself had asked for $16,000 in attorney fees when it brought its action against the homeowners, yet it now claimed the prevailing defendants should receive nothing. (*Id.* at p. 1399.)

12

Although section 685.040 does not require the party moving for enforcement to prevail, it does require that the proceeding be "necessary," an obvious safeguard against abuse. This requirement encourages the moving party to consider carefully whether the enforcement action is really needed because if it is not, the party will have no opportunity to recoup the attorney fees expended in making it.

We sent this matter back because "[a]ppellants contend their contempt motion, though denied, was successful in prompting defendants to comply with the judgment. Whether that rendered the fees incurred in the contempt motion reasonable and necessary is something the trial court should address in the first instance." (*Buechler v. Butker, supra,* G058054, p. 10.) The court has addressed this issue. It found the contempt motion did not prompt defendants to comply with the judgment. The contempt motion was therefore not necessary and, considering the circumstances, not reasonable either. Appellants' evidence to the contrary was not uncontradicted or unimpeached, and we therefore have no grounds for overturning the court's decision.[6]

---

[6] In their reply brief appellants argue that "'[t]he law neither does nor requires idle acts.'" From this maxim, they infer that because we sent the matter back to assess the reasonableness of and necessity for the contempt motion, we *must* have meant the trial court to award them *something* for their fees.

That is one way to look at it, though a remarkably illogical one. Another way would be to discern a strong hint to the trial court to look closely at the necessity for the contempt motion. Our statement "the evidence supports a conclusion that Buechler's shifting positions on how defendants were to replace their sewer connection . . . were counterproductive and, rather than enforcing the judgment, actually inhibited the enforcement of the judgment" (*id.* at p. 8.) could well be interpreted as suggesting *why* another hearing was necessary. We had no opinion about whether the trial court should have granted their fees; we opined only that the determination needed to be done right. Doing something right is not an "idle act." It's unfortunate for appellants that they still lost, even when it was done right.

13

## DISPOSITION

The order denying appellant's attorney fee motion is affirmed.

Respondents are to recover their costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

GOETHALS, J.

MOTOIKE, J.